IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **WINEBOW, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**BOGLE VINEYARDS, INC.**<br><br>Defendant. | Case No. _____ |

## VERIFIED COMPLAINT

Plaintiff Winebow, Inc. ("Winebow"), files this Verified Complaint against Defendant Bogle Vineyards, Inc. ("Bogle"), seeking preliminary and permanent injunctive relief. In support of its request for relief, Winebow alleges as follows:

### BACKGROUND

1. Winebow files this action for injunctive relief pending the commencement and completion of an arbitration between the parties arising out of Bogle's unlawful termination of Winebow's agreement to distribute Bogle's wines throughout the state of Illinois.

### THE PARTIES

2. Plaintiff Winebow is a citizen of Delaware and Virginia. It is a corporation organized under the laws of Delaware with its principal place of business in Glen Allen, Virginia.

3. Defendant Bogle is a citizen of California. It is a corporation organized under the laws of California with its principal place of business in Clarksburg, California.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the citizenship of the parties in this action are completely diverse and the amount in controversy exceeds $75,000.

5. Venue is appropriate in this Court, because a substantial part of the events giving rise to the claim occurred in this judicial district and the distribution rights at issue include this judicial district. 28 U.S.C. § 1391(b)(2). Moreover, Bogle is subject to the court's personal jurisdiction, because it has purposefully directed its business to the state of Illinois. 28 U.S.C. § 1391(b)(3).

## FACTS

**A.     The Parties' Distribution Agreement**

6. Winebow is a distributor and importer of fine wines and spirits. Winebow operates in several states, including Illinois.

7. Bogle is a California-based winery that produces wines under such labels as Bogle Family Vineyards, Juggernaut, Phantom, and Twenty Acres.

8. The parties entered into a Distribution Agreement, effective January 1, 2011 (the "Agreement"), granting Winebow the exclusive rights to distribute Bogle's wine brands throughout the state of Illinois. A copy of the Agreement is attached as Exhibit 1.

9. The term of the Agreement was for one calendar year through December 31, 2011. Then beginning on January 1, 2012 the Agreement would automatically renew "for successive one-year terms unless [Bogle] or [Winebow] gives notice to the other of its intention not to renew the Agreement as described in Exhibit F."

10. Exhibit F of the Agreement identifies the limited circumstances in which Bogle may terminate the Agreement without compensating Winebow.

11. As applicable here, either party may terminate the Agreement for "good cause" with 30 days' notice. "Good cause" is defined in the Agreement as: "(i) negligent or intentional misrepresentation of a material fact; (ii) the failure to fulfill any of the representations in this Agreement; or (iii) the failure to meet 90% of the performance criteria per varietal established by the parties in Exhibit B for two consecutive calendar years, as measured on an annual basis during the calendar year of this Agreement."

12. The allegedly defaulting party then has a thirty-day period to cure the alleged default.

13. Absent any reason identified in Exhibit F of the Agreement, neither party had a right to terminate the Agreement and it would renew for one-year terms in perpetuity.

14. Paragraph 4(g) of the Agreement governs disputes between the parties.

15. Paragraph 4(g) of the Agreement also includes a fee-shifting clause stating: "In the event either party incurs attorney's fees as a result of a dispute regarding this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, as determined by arbitration."

B. **Winebow's Successful Growth of the Bogle Brand in Illinois**

16. In addition to Illinois, Winebow distributes Bogle branded wine in New York and New Jersey.

17. The parties have enjoyed a productive and profitable relationship in each of these states by growing sales of Bogle wine. Indeed, in Illinois, Bogle is the cornerstone of Winebow's business in the state.

18. Bogle currently accounts for approximately 16.4% of Winebow's total sales in Illinois by revenue. Bogle is Winebow's best-selling brand in Illinois. The value of the rights to distribute such a brand is greater than $75,000, as Winebow generates millions of dollars in annual revenue from the sale of Bogle wines in Illinois.

19. As an example of the growth that Winebow helped Bogle achieve in Illinois, Bogle's total annual sales in Illinois have grown by approximately 100% percent over the past ten years.

20. Because the parties' Agreement is evergreen, it is difficult or impossible to determine the potential lost profits that Winebow could realize from its continued partnership with Bogle.

21. The loss of the Bogle brands in Illinois will have far-reaching impacts on Winebow's business that cannot be quantified solely by monetary damages nor are money damages ascertainable.

22. In Illinois, Winebow employs approximately one hundred (100) persons, including sales representatives, delivery and warehouse personnel, and various other administrative staff.

23. The loss of the Bogle brands will undoubtedly result in decreased employee morale and the termination of a number of long-term and valuable employees.

24. One of the important ways that distributors, like Winebow, may grow their business is by acquiring the rights to distribute new brands. The loss of a key brand, like Bogle, will impair Winebow's ability to obtain new winery partners. Likewise the loss of a family of brands like Bogle may also cause other existing Winebow supplier partners to terminate their agreements with Winebow in Illinois and elsewhere.

25. The loss of a large supplier like Bogle will also impair Winebow's ability to attract and retain top sales talent for the highly competitive markets in Illinois.

26. Additionally, Bogle's departure will also damage Winebow's reputation amongst its retail customers throughout Illinois.

**C.  Bogle's Pretextual Termination of the Agreement**

27. On November 30, 2023, Bogle transmitted a letter by e-mail and Federal Express informing Winebow that it was terminating Winebow as its distributor in Illinois for "good cause," as that term is defined in the Agreement (the "Termination Letter").

28. Bogle stated that the termination would be effective on January 1, 2024. In a subsequent letter dated December 6, 2023, Bogle stated that Winebow would remain Bogle's exclusive distributor in Illinois through January 2024 and then enter into a dual distributorship with an unnamed successor distributor in February 2024. The successor distributor would then become Bogle's sole Illinois distributor effective March 1, 2024.

29. Bogle identified two purported reasons supporting its position that it has "good cause" to terminate the Agreement.

30. First, Bogle alleges in the Termination Letter that Winebow failed to achieve 90% of its sales goals for two consecutive years effective as of January 1, 2024. Bogle further alleges that Winebow "has consistently failed to meet 90% of the goals that the parties had mutually agreed upon for the distribution of each varietal for the years 2020-present." Bogle inaccurately claims that this is not curable.

31. To the extent there were any sales goals between the parties, they were not binding on the parties under the Agreement. The Agreement was never amended to reflect any binding or enforceable sales goals that could serve as the basis of a "good cause" termination. Nor did the

5

parties identify sales targets by varietal or incorporate such goals into Exhibit B-1 to the Agreement, both of which were conditions precedent to terminating the Agreement for "good cause."

32. Second, Bogle claims that Winebow breached the Agreement by selling more than 20% of its annual Bogle sales to Binny's, the largest state-wide wine, spirits and beer retailer. Bogle then incorrectly asserts again that this is not curable.

33. This alleged cause for termination is without merit as Bogle regularly encouraged Winebow to increase its sales to Binny's, which is one of the largest wine retailers in the state with over 45 retail outlets throughout the state, and which bills itself as the largest wine, spirits and beer superstore in the Midwest.

34. Moreover, this alleged cause for termination is without merit because selling more than 20% of its annual sales to an account like Binny's does not serve as a proper basis for a "good cause" termination under the Agreement.

35. The two reasons Bogle provided to Winebow in its notice of termination are just pretext for Bogle's real reasons for terminating the Agreement: it wants to use a different wholesaler without complying with the contractual obligations of a no-fault termination.

36. Bogle's pretext is demonstrated by the fact that Bogle has also transmitted termination letters to Winebow for their distribution relationships in New York and New Jersey.

37. Further confirming that these purported sales failures are mere pretext, Bogle informed Winebow of these alleged failings before the end of the calendar year and with the busiest wine sales season still ahead of it.

38. Bogle's bases for terminating the Agreement are also not supported by either the details of the parties' working relationship or the law.

39. The timing of Bogle's termination is also harmful to Winebow's competitive advantages in the marketplace, because Bogle is privy to Winebow's strategies and goals for the Bogle brands in 2024.

40. By letter dated December 13, 2023, Bogle confirmed its intent to terminate the Agreement effective January 1, 2024, despite being made aware as to the legal and factual defects supporting its purported termination for "good cause."

## COUNT I
### Breach of Contract

41. Winebow incorporates its allegations in paragraphs 1-40 as though realleged herein.

42. The Agreement is a binding contract between the parties. Per the terms of the Agreement, it could not be terminated absent certain enumerated reasons identified in Exhibit F of the Agreement.

43. Winebow has performed its obligations under the Agreement and there is no valid basis to terminate it.

44. The Termination Letter is void as a matter of law.

45. Bogle has breached the Agreement by attempting to terminate it without compensation for the knowingly and intentionally false reasons identified in the Termination Letter.

46. Winebow has been damaged due to Bogle's breach of the Agreement.

47. Winebow is entitled to preliminary injunctive relief to maintain the status quo pending a resolution of the parties' dispute either in this Court or in an arbitration, if the Agreement's arbitration provision is enforceable. Without an injunction, the arbitration and

Winebow's request for preliminary and permanent injunctive relief therein could be rendered meaningless if the brands are allowed to transfer to a new distributor.

48. Winebow is likely to succeed on the merits of its breach of contract claim against Bogle, because its claim of "good cause" is pretextual and unsupported by the parties' performance under the Agreement.

49. Winebow does not have an adequate remedy at law, because of the damage to Winebow's goodwill, reputation in the marketplace, and future lost profits which are not ascertainable.

50. Winebow will be irreparably harmed if an injunction is not granted as a result of Bogle's termination for the reasons alleged herein. As Bogle has confirmed, it intends to terminate the Agreement at the end of December. This threat, therefore, is immediate and real.

51. Additionally, the public interest weighs in favor of an injunction, because Bogle should not be permitted to improperly benefit from its contractual breaches.

52. Bogle will also not be harmed by the issuance of the injunction, because Winebow will still be contractually obligated to represent the Bogle brands throughout Illinois. Further, both parties will continue to benefit from the continuation of their relationship to sell Bogle wine in Illinois.

WHEREFORE, Winebow prays that this Court:

(a) Issue a temporary restraining order and preliminary and permanent injunction preventing Bogle from terminating the Agreement until a final arbitration judgment and order can be entered and confirmed in a court of law;

(b) Award Winebow its attorney's fees and costs incurred in obtaining this injunction; and

(c)     Award Winebow any other relief that the Court deems just and proper.

Respectfully Submitted,

WINEBOW

*By Counsel*

 /s/ Barry P. Kaltenbach
Barry P. Kaltenbach (ARDC 6270034)
kaltenbach@millercanfield.com
Miller, Canfield, Paddock & Stone, P.L.C.
227 W. Monroe, Suite 3600
Chicago, Illinois 60606
Tele: (312) 460-4200
(Will serve as local counsel)

Brian Wainger
(Will seek *pro hac vice* admission)
Kaleo Legal
4456 Corporation Lane, Suite 135,
Virginia Beach, VA 23462
(757) 761-0934
bwainger@kaleolegal.com

41516392.1/162512.00001

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 12 / 19 / 2023

*[signature]*

Name: Michael J. Manzo

Title: EVP, CFO